**Michael DENU, Plaintiff,**

v.

**WESTERN GEAR CORPORATION, Defendant.**

**No. EV 81–18–C.**

United States District Court, S.D. Indiana, Evansville Division.

July 15, 1983.

Gary Becker, Tell City, Ind., for plaintiff.

James W. Riley, Jr., Daniel F. Evans, Jr., Indianapolis, Ind., for defendant.

## MEMORANDUM ENTRY

BROOKS, District Judge.

On October 5, 1979 the plaintiff, Michael Denu, was in the process of cleaning a printing press belonging to his employer St. Meinrad Archabbey ("Abbey Press") when his foot became caught in a portion of the press. As a result of the accident the plaintiff suffered severe injuries and his foot had to be amputated. The printing press involved had been purchased by plaintiff's employer in 1975 from the defendant Western Gear Corporation's successor Miller Printing Equipment Corporation who had manufactured and originally sold the press in 1964. At the time of the subsequent sale to Abbey Press the machine in question was sold as a reconditioned press and said reconditioning was done by defendant's successor over a two-three month period while the press was being erected and assembled. Plaintiff filed his two count complaint in February 1981 seeking to recover damages in Count I on the basis of strict liability and Count II on the basis of negligent design, manufacture, inspection, testing, distribution, sale, and maintenance of the press. Essentially, plaintiff's claims involve the lack of safety guards/equipment and the lack of adequate warnings. Defendant, Western Gear, filed their motion for summary judgment in June 1983, contending that plaintiff's claims are barred by the statute of limitations contained in Indiana Code Section 33–1–1.5–5.

Indiana Code Section 33–1–1.5–5 is the statutory provision which sets forth the statute of limitations on product liability actions such as the case involved herein. The statute provides:

This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, any product liability action must be commenced within two [2] years after the delivery of

the product to the initial user or consumer; except that, if the cause of action accrues more than eight [8] years but not more than ten [10] years after that initial delivery, the action may be commenced at any time within two [2] years after the cause of action accrues. [IC 33-1-1.5-5, as added by Acts 1978, P.L. 141, § 28, p. 1298.]

Defendant contends that since the press involved was sold initially in 1964 that the statute of limitations started running at that time, that the subsequent sale to Abbey Press in 1975 had no effect on the running of the statute, and thus plaintiff's claim is barred. Defendant points to the Indiana Supreme Court's interpretation of the products liability statute of limitation in *Daque v. Piper Aircraft Corporation* (1981) Ind., 418 N.E.2d 207 in support of their argument that plaintiff's claim is barred. The court in that case held that a products liability action based upon strict liability or negligence would be barred if the damages incurred by plaintiff occurred more than ten (10) years after the product was first placed in commerce. Applying that interpretation to the facts in this case it is undisputed that the press was first sold in 1964 and that the plaintiff was not injured until 1979. Thus, it would appear that plaintiff's claim is barred by the Ten (10) year limitation contained in the statute. However, plaintiff contends that the subsequent reconditioning of the press in 1975 acted in essence to create a "new" product which upon its sale was covered by the ten (10) year statute of limitations. Defendant vigorously objects to this view contending that the product sold in 1975 was the same product that was sold in 1964.

The Court has been unable to find any cases applying Indiana's product liability statute to a situation involving the sale of a reconditioned product and the parties have not cited the Court to any such cases. It is noted however that *Daque v. Piper Aircraft, supra,* involved a used product that apparently passed through a number of hands prior to the accident giving rise to that cause of action. However, nowhere in that case is there any indication as to whether the airplane involved had been reconditioned in any way by the manufacturer or seller prior to the sale to *Daque,* nor did the court address what, if any, effect such action might have had on its holding in the case. It is therefore possible that had the plane been reconditioned/renovated by the manufacturer and then reintroduced into the stream of commerce that the holding in *Daque* might have been different since Indiana Code 33-1-1.5-5 does not by its terms limit its application to the introduction into commerce of new products.

It is undisputed in this case that the manufacturer reconditioned the piece of equipment involved and in fact sold the press as such. There is however disagreement as to the effect of Miller's actions. Did it create a product through reconditioning, modification, or alteration that was introduced into commerce in 1975, or was the press the same product that was sold in 1964? Based upon the record developed thus far, it is impossible for the Court to determine what changes, if any, were made to the press sold in 1964 upon its subsequent sale in 1975, and what the effect of such changes were upon the nature of the product sold. Although the sale of a used product may not, without more, give rise to the expectations of safety that courts have held are justifiably created by the introduction of a new product into commerce and which partially supports the rationale for product liability actions, it appears to this Court that the introduction into commerce of a reconditioned product by a manufacturer may give rise to expectations of safety which would support a products liability action. The extent and nature of the manufacturers alteration, modification or reconditioning of the product are certainly material questions of fact which have a bearing on whether the manufacturer has introduced a "new" product into commerce and whether he should be held liable for defects in that product.

It has been repeatedly held that despite all that may be shown, a court always has the power to deny summary judgment if, in its sound judgment, it believes for any rea-

son that the fair and just course is to proceed to trial rather than to resolve the case on a motion. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948). *See also, Western Chain Co. v. American Mutual Liability Ins. Co.*, 527 F.2d 986, 990 n. 5 (7th Cir. 1975).

It is the opinion of the Court, after examining the entire record in this cause, the applicable law, and the policies underlying products liability actions, that in the interest of sound judicial administration, the Court must withhold decision of the ultimate questions involved in this case until it is presented with a more solid basis of findings which can best be afforded by a plenary trial. *Kennedy v. Silas Mason, supra.*